UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GORDON ALTMAN,

        Plaintiff,

Case No. 2:25-cv-72

v.

Honorable Hala Y. Jarbou

JAMIE CORRIGAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim on which relief may be granted.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues the following URF personnel: Warden Jamie Corrigan; Prisoner Counselor Unknown Plumm; and Corrections Officers Unknown Robinson, Unknown Picotte, Unknown Manning, Unknown Osborn, and Unknown Paviat.

Plaintiff alleges that on February 13, 2025, he was housed in Lime Unit at URF. (Compl., ECF No. 1, PageID.4.) Defendant Plumm approached Plaintiff and asked Plaintiff about the crime for which he was incarcerated. (*Id*.) Plaintiff declined to discuss the matter with Defendant Plumm. (*Id*.)

Thereafter, Defendant Robinson stopped Plaintiff as he was "walking across base" and asked Plaintiff why he did not tell Defendant Plumm about Plaintiff's case. (*Id*.) Plaintiff told Defendant Robinson that he did not want to tell Plumm. (*Id*.) Plaintiff walked away. (*Id*.)

Later that day, Plaintiff was called down to the desk and told that he had received a misconduct report for loitering and that Plaintiff did not have permission to use the restroom. (*Id*.)

Then, Defendant Manning threatened to harm Plaintiff because of the crime for which he was incarcerated.[1] (*Id*.) Defendant Manning told Plaintiff that Defendants Plumm and Robinson had told Manning about Plaintiff's third-degree criminal sexual conduct (CSC-III) offense. (*Id*.)

The same day, Plaintiff was called out to pick up legal mail. (*Id*., PageID.5.) He went to the window and signed for the mail, but he was not given the mail. (*Id*.) Plaintiff was told the mail had been at the facility since February 10, but that it had to be "checked out" before Plaintiff could receive it. (*Id*.)

---

[1] The MDOC Offender Tracking Information System (OTIS) indicates that Plaintiff is serving a sentence of 4 years, 3 months to 15 years imposed by the Muskegon County Circuit Court following Plaintiff's guilty plea to a charge of third-degree criminal sexual conduct. *See* MDOC OTIS, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=393155 (last visited May 20, 2025).

2

Two days later, on February 15, Plaintiff asked Defendant Paviat if Plaintiff could use the restroom. (*Id.*, PageID.4.) Paviat gave Plaintiff permission. (*Id.*) Later, Plaintiff was called to the desk and given a misconduct report for using the restroom without permission. (*Id.*) Plaintiff advised the officer that Defendant Paviat had given Plaintiff permission. (*Id.*) Defendant Paviat was present; he turned his back and laughed. (*Id.*)

At about 5:30 p.m. on February 15, Plaintiff asked Paviat again if Plaintiff could use the restroom. (*Id.*) This time Plaintiff also asked if the unit representative could verify the permission to ensure that Plaintiff did not receive another misconduct. (*Id.*) Defendant Paviat became very upset, called Plaintiff a rapist and other names, and denied Plaintiff's request to use the restroom. (*Id.*, PageID.5.)

Also on February 15, Plaintiff was given a misconduct by another unidentified corrections officer for violation of a posted rule. (*Id.*) The same day, Defendant Manning wrote Plaintiff the same misconduct for the same alleged rule violation. (*Id.*) Defendant Manning wrote his misconduct report as a Class III misconduct; the other officer wrote the misconduct as a Class II violation. (*Id.*) Plaintiff states that the "duplicative misconduct report" scenario played out with Defendant Manning regularly. (*Id.*) Plaintiff claims that every time another corrections officer wrote a misconduct report on Plaintiff, Defendant Manning would write a misconduct report for "the very same thing." (*Id.*) Plaintiff indicates that Defendant Manning let it be known that he was taking that action "because of what [Plaintiff] was incarcerated for." (*Id.*)

The same day, Plaintiff was walking back from the "chow hall." (*Id.*) Defendant Osborn stopped Plaintiff and asked him for his identification card. (*Id.*) Plaintiff provided his card. (*Id.*) Later, Plaintiff was called out to be reviewed for a misconduct report written by Defendant Osborn. (*Id.*) The misconduct report was written because "Plaintiff was walking too slow from the chow

3

hall." (*Id.*) Plaintiff asked the reviewing officer, whom Plaintiff does not identify, to review the "camera." (*Id.*) The unnamed officer threatened to put Plaintiff in segregation if Plaintiff did not leave. (*Id.*) The officer "refused to review anything." (*Id.*)

Plaintiff wrote eight kites to Defendant Corrigan. (*Id.*) Plaintiff also spoke directly with Defendant Corrigan regarding "the problems [Plaintiff] was having with each one of [Corrigan's] staff members because of what [Plaintiff] is incarcerated for." (*Id.*, PageID.5–6.) Defendant Corrigan indicated that he would "look into this." (*Id.*, PageID.6.) Nonetheless, nothing was done to correct the problems which continued at least until the date Plaintiff filed his complaint.[2] (*Id.*)

Plaintiff notes that he filed eight grievances between February 13, 2025, to February 20, 2025. (*Id.*) All of them were rejected by the URF grievance coordinator because the issues raised were "Nongrievable." (*Id.*)

Plaintiff seeks compensatory and punitive damages and a declaration that Defendants' conduct violated the First Amendment.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[2] Plaintiff did not date his complaint. (ECF No. 1, PageID.7.) It was postmarked on April 17, 2025. (*Id.*, PageID.8.)

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff claims that Defendants violated his First Amendment right to be free of retaliation—in this instance, harassment and threats of physical harm—because of what he is incarcerated for. (Compl., ECF No. 1, PageID.6.) Plaintiff also claims that he has a First Amendment right "to file grievances against [the MDOC]." (*Id*.) Plaintiff contends that he has "been denied his rights to the grievance procedure." (*Id*.)

5

### A.  First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . . ." *Id.* at 353 n.3.

Plaintiff does not allege any facts regarding the content of his grievances. In light of the fact that the grievance coordinator deemed all of the grievances to raise issues that were not "grievable," and that Plaintiff's filing of eight "non-grievable" grievances in three days resulted in Plaintiff being placed on modified access to the grievance system, it is probable that Plaintiff's use

6

of the grievance system was abusive. But even if Plaintiff's use of the grievance system was proper, as explained below, he has failed to allege sufficient facts to state a retaliation claim.

### 1.    **Defendant Picotte**

Plaintiff lists Defendant Picotte in the complaint caption and in the list of parties. (Compl., ECF No. 1, PageID.1, 3.) Plaintiff makes no further mention of Defendant Picotte in his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendant Picotte in the body of his complaint, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8

7

(requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff has failed to state a claim against Defendant Picotte on which relief may be granted.

### 2. Defendant Corrigan

Plaintiff contends that Defendant Corrigan is liable for the retaliatory acts committed by other URF personnel because Plaintiff "spoke directly to [Corrigan] about the problems [Plaintiff] was having with each one of [Corrigan's] staff members because of what [Plaintiff] is incarcerated for[: CSC-III]." (Compl., ECF No. 1, PageID.5–6.) Nonetheless, "there has been nothing done to correct the problems." (*Id.*, PageID.6.)

Although Plaintiff alleges that he spoke directly with Defendant Corrigan, Plaintiff seeks to hold Defendant Corrigan liable due to his supervisory position. Government officials, such as Defendant Corrigan, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*,

8

> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Corrigan encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct. And any conclusory allegations of supervisory responsibility are insufficient to show that Defendant Corrigan was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the reasons set forth above, Plaintiff has failed to state any claim against Defendant Corrigan upon which relief may be granted.

### 3.     **Defendant Plumm and Robinson**

Plaintiff alleges that Defendant Plumm asked about Plaintiff's crime and Plaintiff refused to divulge that information. (Compl., ECF No. 1, PageID.4.) Later, Defendant Robinson stopped Plaintiff and asked him why he did not want to inform Defendant Plumm regarding the nature of Plaintiff's crime. (*Id.*) Plaintiff replied that he did not want to. (*Id.*) Defendants Plumm and Robinson, according to Defendant Manning, advised Manning about Plaintiff's CSC-III case. (*Id.*)

Plaintiff has not alleged that Defendants Plumm or Robinson took adverse action against Plaintiff. Thus, Plaintiff's claims against Defendants Plumm and Robinson fail at the second step of the *Thaddeus-X* analysis. Plaintiff has failed to state a First Amendment retaliation claim against Defendants Plumm and Robinson upon which relief may be granted.

####    4.    Defendants Paviat, Manning, and Osborn

Plaintiff clears the second step of the *Thaddeus-X* analysis with his allegations against Defendants Paviat, Manning, and Osborn. Each of these Defendants took adverse action against Plaintiff. Defendant Paviat gave Plaintiff permission to use the bathroom and, thereafter, apparently denied allowing Plaintiff to use the restroom, resulting in Plaintiff receiving a misconduct report. (Compl., ECF No. 1, PageID.4.) Defendant Paviat also called Plaintiff a rapist and other names and denied a subsequent request to use the restroom. (*Id.*, PageID.5.) Defendant Manning wrote Plaintiff a duplicative misconduct report on more than one occasion. (*Id.*) And, Defendant Osborn wrote Plaintiff a misconduct for "walking too slow from the chow hall." (*Id.*)

Plaintiff's claims against the last three Defendants fail, however, at the third step of the *Thaddeus-X* analysis. Plaintiff makes clear that the Defendants took these adverse actions "because of what [Plaintiff] is incarcerated for." (*Id.*, Page ID.6.) Plaintiff's CSC-III crime is not protected conduct. If, as Plaintiff clearly alleges, his crime served as Defendants' motivation for their adverse actions, Plaintiff has failed to state a First Amendment claim.

Plaintiff's filings of grievances, to the extent they were not frivolous or abusive, would be protected conduct; but Plaintiff alleges no facts to support an inference that the grievances motivated the adverse actions. Indeed, Plaintiff does not offer any facts that suggest that Defendants were even aware of the grievances before they took the alleged adverse actions.

Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Defendants Paviat, Manning, or Osborn upon which relief may be granted.

###    B.    Constitutional Right to a Grievance Procedure

As an initial matter, various courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v.*

*Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances, did not deprive Plaintiff of due process.

Plaintiff's contention that he has a First Amendment right to file a grievance fares no better. To the extent that Plaintiff argues that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any interference with Plaintiff's pursuit of the grievance remedy could not deny his First Amendment right to access the courts. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials'. . . ." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D.

Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

For all of these reasons, Plaintiff has failed to state a claim that Defendants violated Plaintiff's constitutional rights by interfering with his pursuit of the administrative grievance remedy. Accordingly, Plaintiff has failed to state a claim on which relief may be granted with regard to the processing of Plaintiff's grievances.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: May 27, 2025                         /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE